**PRINCESS CRUISES, INC.,**
Plaintiff–Appellee,

v.

**UNITED STATES, Defendant–**
**Appellant.**

No. 99–1014.

United States Court of Appeals,
Federal Circuit.

Jan. 5, 2000.

**1354**

Judith A. Lee, Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for plaintiff-appellee. Of counsel on the brief was Lisa A. Murray, Gibson, Dunn & Crutcher LLP.

Todd M. Hughes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were David W. Ogden, Acting Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief was Richard McManus, Attorney, Office of the Chief Counsel, United States Customs Service, of Washington, DC.

J. Kevin Horgan, DeKieffer & Horgan, of Washington, DC, for amicus curiae Thomson Consumer Electronics, Inc.

Lawrence M. Friedman, Barnes, Richardson & Colburn, of Chicago, Illinois, for amicus curiae Amoco Oil Company.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

MICHEL, Circuit Judge.

The United States appeals the summary judgment of the United States Court of International Trade, holding that the Harbor Maintenance Tax ("HMT"), 26 U.S.C. § 4461 (1994), is unconstitutional as applied to commercial passengers on cruise ships and that the Arriving Passenger Fee ("APF"), 19 U.S.C. § 58c(a)(5) (1994 & Supp. III 1997), was improperly assessed on certain of the appellee's cruises. *See Princess Cruises v. United States*, 15 F.Supp.2d 801 (Ct. Int'l Trade 1998). Princess Cruises ("Princess") contested Customs's assessment of the HMT on cruises with "stopovers" or "layovers" in HMT-covered ports if the originating and terminating ports of the cruise were HMT-exempt. In addition, the cruise line challenged the inclusion of the full cost of the passenger ticket in the calculation of the HMT.[1] Princess also challenged the collection of APFs on cruises that originate in or arrive directly from an APF-exempt port. The Court of International Trade held that the HMT was unconstitutional and did not reach the issue of the application of the tax to layovers or stopovers, nor the issue of valuation of the cruise for purposes of calculating the HMT. The Court of International Trade also held that APF liability could only be determined based on the beginning and ending ports of a cruise, without regard to portions of the journey made on other modes of transportation, e.g., air travel. The Court of International Trade went on to hold that the APF was not due for passengers on cruises that

---

1. The HMT is an *ad valorem* tax. It is calculated as a percentage of the value of the passenger ticket, or in the case of cargo, on the value of the cargo. Princess originally challenged the calculation of the HMT over the full price of the ticket, arguing that the HMT should not be calculated based on the non-transportation portions of the ticket, such as food. The trial court's opinion did not address this issue, and it is not raised in the briefs on appeal. Therefore, this court does not reach the issue.

begin in an exempt port and arrive directly in the United States, or begin in the United States and "arrive temporarily or end in [exempt ports]." This appeal was submitted for our decision following oral argument on October 5, 1999.

Because we hold that the HMT, as applied to passenger liners, is not unconstitutional and is severable from the unconstitutional application of the tax to exports, we reverse the decision of the Court of International Trade as to the constitutionality of the HMT. In addition, we hold that the HMT is properly assessed on stopovers or layovers at non-exempt ports, regardless of the origination or ultimate destination of the cruise. As to the APF, we hold that the Customs Service's interpretation of "journey" to include multiple stops and multiple forms of transportation, is not unreasonable, and therefore reverse the Court of International Trade's decision. We thus remand for a determination of Princess's HMT and APF liability that is consistent with this opinion.

### Background

Princess operates cruises around the world. The Princess voyages of particular relevance to this appeal, however, are the "Transcanal" cruises and the "Vancouver/Wittier" cruises. The Transcanal route begins in either Acapulco, Mexico, or San Juan, Puerto Rico, traverses the Panama Canal, makes various other stops in Central or South America and terminates in either San Juan or Acapulco. The Vancouver/Wittier route begins in either Vancouver, Canada, or Wittier, Alaska,[2] makes brief stopovers during which passengers may leave the ship in ports that are subject to the HMT, such as Ketchikan, Alaska, and terminates in either Wittier or Vancouver. Passengers usually arrive from the United States at the port of cruise departure and return to the United States from the terminal port of the cruise by air. In some cases, the air and ship travel are sold as a package.

The HMT was enacted in 1986 as part of the Water Resources Development Act ("WRDA"), Pub.L. No. 99–622, 1402(a), 100 Stat. 4082, 4266, as a means of funding maintenance of the nation's seaports. The tax operates by imposing a user-fee on commercial vessels using the ports. The statute directs that the tax be assessed on importers, exporters, domestic shippers and commercial passenger transport (except ferries). *See* 26 U.S.C. § 4461, 4462 (1994 & Supp. III 1997).[3] The revenues from the HMT are used to fund WRDA projects such as the dredging of harbors. Since the imposition of the HMT in 1987,

---

2. Despite being in the U.S., Wittier is not covered by the HMT. *See* 19 C.F.R. § 24.24(b)(1).

3. The relevant text of the statute is as follows:
§ 4461. Imposition of Tax.
(a) General Rule.—There is hereby imposed a tax on any port use.
(b) Amount of Tax.—The amount of the tax imposed by subsection (a) on any port use shall be an amount equal to 0.04 percent of the value of the commercial cargo involved.
(c) Liability and Time of Imposition of Tax.—
(1) Liability.—The tax imposed by subsection (a) shall be paid by—
(A) in the case of cargo entering the United States, the importer,
(B) in the case of cargo to be exported from the United States, the exporter, or
(C) in any other case, the shipper.
(2) Time of Imposition.—Except as provided by regulations, the tax imposed by subsection (a) shall be imposed—

(A) in the case of cargo to be exported from the United States, at the time of loading, and
(B) in any other case, at the time of unloading.
§ 4462. Definitions and Special Rules.
(a) Definitions.—For purposes of this subchapter—

.      .      .      .      .

(3) Commercial cargo.—
(A) In General.—the term "commercial cargo" means any cargo transported on a commercial vessel, including passengers transported for compensation or hire.

.      .      .      .      .

(4) Commercial vessel.—

.      .      .      .      .

(B) Exclusion of ferries.—
(i) In general.—the term "commercial vessel" does not include any ferry engaged primarily in the ferrying of passen-

Customs has been assessing the tax for all passengers aboard cruises that originate, layover or terminate in an HMT-covered port. Customs issued a regulation imposing this requirement in 1987. *See* 52 Fed. Reg. 10198, 10202 (1987) (interim regulations); 19 C.F.R. § 24.24 (1999)[4].

The APF is a fee imposed for the "provision of customs services" on the arrival of passengers aboard commercial vessels or aircraft from a place outside the United States. *See* 19 U.S.C. § 58c(a)(5). The APF was part of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub.L. No. 99–272, § 13031, 100 Stat. 82, 308 (1986). The statute exempts from the APF passengers whose journey "originated" in Canada, Mexico, a territory of the U.S. or an adjacent island. Passengers whose journey originated in the U.S. and was limited to the above

locations are also exempt.[5] Customs defines the place where a journey "originated," for the purposes of the APF, as "the location where the person's travel begins under cover of a transaction which includes the issuance of a ticket or travel document for transportation into the customs territory of the United States." 19 C.F.R. § 24.22(g)(2)(i)(B).[6] The regulation specifically recognizes that a "journey . . . may encompass multiple destinations and more than one mode of transportation." *Id.* Based on this regulation Customs would, for example, assess the fee on a passenger who flew from the continental United States to Puerto Rico, boarded a cruise ship, traveled to a non-exempt port, terminated the cruise in Mexico and returned by air to the United States.

After an audit of Princess's HMT and APF collections and remittances, Customs

---

gers (including their vehicles) between points within the United States, or between the United States and contiguous countries.

Pub.L. No. 99–662, § 1402(a), 100 Stat. 4082, 4266 (codified as amended at 26 U.S.C. §§ 4461, 4462).

**4.** The relevant portion of the regulation follows:

(3) Passengers—

(i) Time and place of liability. Subject to the exemptions and special rules of this section, *when a passenger boards or disembarks a commercial vessel at a port within the definition of this section, the operator of that vessel is liable for the payment of the port use fee.* The fee is to be based upon the value of the actual charge for transportation paid by the passenger or on the prevailing charge for comparable service if no actual charge is paid. The vessel operator on each cruise is liable only once for the port use fee for each passenger.

19 C.F.R. § 24.24(e)(3)(i) (emphasis added).

**5.** The text of the statute follows:

(a) Schedule of fees

In addition to any other fee authorized by law, the Secretary of the Treasury shall charge and collect the following fees for the provision of customs services in connection with the following:

. . . . .

(5) For the arrival of each passenger aboard a commercial vessel or commercial aircraft from a place outside the United

States (other than a place referred to in subsection (b)(1)(A) of this section), $5.

(b) Limitations on fees

(1) No fee may be charged under subsection (a) of this section for customs services provided in connection with—

(A) the arrival of any passenger whose journey—

(i) originated in—

(I) Canada

(II) Mexico

(III) a territory or possession of the United States, or

(IV) any adjacent island (within the meaning of section 1101(b)(5) of Title 8), or

(ii) originated in the United States and was limited to—

(I) Canada,

(II) Mexico,

(III) territories or possessions of the United States, and

(IV) such adjacent islands;

19 U.S.C. § 58c (a)(5), (b)(1) (1988).

**6.** This interpretation was not promulgated as a regulation until 1993. *See* 58 Fed.Reg. 54,-271, 54,284 (1993). Neither party disputes, however, that during the relevant period covered by the Customs audit (1986–1991) Customs applied an interpretation of the statute that defined journey identically to the definition later described in the regulation.

issued bills to Princess in 1992 for underpayment of those fees. Princess filed a protest challenging the assessment of the fees on March 23, 1993. On December 22, 1993, Customs denied the protest in part. Princess then filed a complaint with the Court of International Trade.

On cross motions for summary judgment, the trial court issued an opinion in 1998 holding that the application of the HMT to transportation services was unconstitutional in light of the Supreme Court decision in *United States v. U.S. Shoe*, 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998) (holding that the application of the HMT to exports was a violation of the export clause of the Constitution). Because it found the statute to be unconstitutional, the trial court did not reach the issue of the applicability of the HMT to stopovers or layovers, or the issue of proper valuation of the cruise for purposes of calculating the HMT. *See Princess Cruises, Inc.*, 15 F.Supp.2d at 803.

The Court of International Trade also held that the term "journey" in the APF statute referred to "travel from origination to termination of the cruise" and that "layover stops did not affect the administration of the APF statute." *Id.* Thus, under the Court of International Trade's holding, a passenger on a cruise originating in an APF-covered port and terminating in the United States would be subject to the APF. A passenger on a cruise originating in an APF-exempt port, such as Acapulco, and terminating in the United States would not be subject to the APF, regardless of any layovers in APF-covered ports. Likewise, a passenger on a cruise originating in a covered port and terminating in the United States would be subject to the fee, even if the last stop prior to arrival in the United States was an exempt port. Under the Court of International Trade's holding, air travel by the passenger would not be a factor in determining APF liability. The United States appealed.

We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

■■■ The United States seeks a reversal of the Court of International Trade's decision that the HMT is unconstitutional as applied to passenger transport and that passengers on Princess cruises that originate and terminate in APF-exempt ports are exempt from the APF. Princess seeks to have the Court of International Trade decision affirmed on the grounds that the application of the HMT to passenger transport is not severable from its unconstitutional application to exports, or, in the alternative, on the statutory interpretation grounds originally argued before the Court of International Trade. We review the determination of the constitutionality of the HMT *de novo*. *See Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (Fed.Cir.1995). Statutory interpretation by the Court of International Trade, including the question of severability, is also reviewed *de novo*. *See id.; cf. Alaska Airlines v. Donovan*, 766 F.2d 1550, 1555 (D.C.Cir.1985) (finding that severability "reduces to a matter of statutory interpretation"). Like the Court of International Trade, this court is required to give deference to Customs Service regulations interpreting portions of the statute that are ambiguous. *See United States v. Haggar Apparel Co.*, 526 U.S. 380, 119 S.Ct. 1392, 1398–1400, 143 L.Ed.2d 480 (1999) (requiring deference to Customs regulations); *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[7]

---

7. We have no doubt that Congress, implicitly, has granted to Customs at least some authority to engage in substantive rulemaking with respect to the subject matter of both the HMT and the APF statutes that are at issue in this case. *Cf. Merck & Co. v. Kessler*, 80 F.3d 1543, 1549–50 (Fed.Cir.1996) (holding that deference was owed to "statutory interpretations by agencies with [substantive] rulemaking powers."). Thus, the substantive regulations promulgated and applied here by Customs are entitled to *Chevron* deference just as surely as the substantive Customs regulations in *Haggar* itself.

## I. Constitutionality of the HMT

We hold that the application of the HMT to passenger transport is not a violation of the export clause of the United States Constitution. In addition, we hold that the unconstitutional application of the HMT to exports is severable from the rest of the statute and its applications. Because the issues of constitutionality and severability raised in this appeal are identical to those addressed by this court in *Carnival Cruise Lines, Inc. v. United States*, 200 F.3d 1361 (Fed.Cir.1999), we do not revisit that discussion here.

## II. Application of the HMT to Stopovers or Layovers

Princess argues in the alternative, even if the HMT is constitutional, it cannot be assessed on stopovers or layovers by cruise ships in HMT-covered ports if the cruise originates or terminates in an HMT-exempt port. Despite the failure of the trial judge to address this issue in his opinion, Princess argues that this court may affirm the judgment concerning the HMT on the basis of the findings of fact and conclusions of law announced from the bench following the parties' oral arguments before the Court of International Trade.

A party may defend a judgment "on any ground properly raised below." *Consolidated Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 814 (Fed.Cir.1990) (quoting *Washington v. Yakima Indian Nation*, 439 U.S. 463, 476 n. 20, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979)). The proper interpretation of the HMT statute was fully briefed and argued by Princess and the government before both this court and the Court of International Trade. Thus, having found that the application of the HMT to passenger transport is not contrary to the Constitution, in the interest of efficiency we now address the question of the proper interpretation of the HMT statutory language and the accompanying regulations.

Princess argues that the HMT should only be applied to cruises beginning or terminating in HMT-covered ports, while a stopover or layover in an HMT-covered port should not trigger liability.[8] In support of its position, Princess alleges that the Customs regulations dictate that it should only be applied at the beginning and end of a cruise voyage. The specific regulations at issue provide that the tax is due "when a passenger boards or disembarks a commercial vessel at a port within the definition of this section." 19 C.F.R. § 24.24(e)(4) (1999). Princess argues that since the definitions of board and disembark are not provided in the statute or the regulation, the court must turn to unrelated Customs regulations for the definition of those words.

Although "board" is not defined anywhere in the Customs regulations, the terms "embark" and "disembark" are defined in a Customs Service regulation as follows:

> [e]mbark means a passenger boarding a vessel for the duration of a specific voyage and disembark means a passenger leaving a vessel at a conclusion of a specific voyage. The *terms embark and disembark are not applicable to a passenger going ashore temporarily at a coastwise port who reboards the vessel and departs with it on sailing from the port.*

19 C.F.R. § 4.80a(a)(4) (1999) (emphasis added). This regulation governs the transportation of passengers between U.S. ports on vessels that are not American-built, owned and documented. *See* 46 U.S.C app. § 289 (1994). It is addressing a different question, and while it may be

---

8. The cruise line is liable for the HMT only once for each passenger on a given cruise. *See* 26 U.S.C. § 4462(g)(1); 19 C.F.R. § 24.24(3)(i) (1999). Thus, even if the cruise began and ended in an HMT-covered port and stopped in multiple HMT-covered ports the cruise line would only be liable for one HMT payment. Thus liability for stopovers or layovers does not trigger additional liability, except in the case where the beginning and ending point of the cruise are exempt ports.

instructive, it is not binding on Customs with respect to the HMT. Thus this court must look to the language of the statute, the intent of Congress as indicated by the legislative history, and the interpretation given by Customs to its own regulation in determining whether the HMT applies to stopovers and layovers.

■ Where the intent of Congress on a particular question is clear, the courts and the agency "must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. In determining what was the intent of Congress, the court may look to the legislative history of the statute. *See id.* at 845, 104 S.Ct. 2778.

In this case the language of the statute is not clear and unambiguous about whether the HMT is to be imposed on stopovers or layovers at HMT-covered ports. Nevertheless, the intent of Congress is illuminated by the legislative history of the HMT and subsequent taxes. Reports from the various congressional committees developing the HMT reveal that Congress was particularly concerned with enacting an equitable tax that applied to all port users. For example, the House Ways and Means Committee described the HMT as a "uniform excise tax paid by the principal beneficiaries of Federal port development and maintenance costs." H.R.Rep. No. 99–251, pt. III at 9 (1985). Furthermore, in 1989 in considering an international departure tax on ship passengers as part of the Budget Reconciliation Act, Pub.L. No. 101–239, Congress found that

> [u]nder special rules, no harbor maintenance tax applies to cruise ships loading or unloading with respect to cruises to or from Alaska, Hawaii, or a U.S. Possession, *unless the Alaska, Hawaii, or U.S. Possession port is only a stopover to a foreign destination.*

H.R. Conf. Rep. No. 101–386, at 602 (1989) (emphasis added), *reprinted in* 1989

U.S.C.C.A.N. 3018, 3205; *see also* Senate Fin. Comm. Explanation of Revenue Reconciliation Act of 1989, 135 Cong. Rec. 24,236, 24,359 (1989) (containing the same language). While the above language deals specifically with stopovers as an exception to the special HMT rules for Alaska and Hawaii [9] it implies that in considering subsequent taxes Congress believed that the HMT applied to stopovers. While this legislative history provides some indication that Congress intended for the HMT to apply when a cruise ship made a stopover or layover in an HMT-covered port, it is not sufficient evidence to indicate an "unambiguous intent" as required by *Chevron.* Thus we must now analyze the Customs interpretation under the second prong of the *Chevron* test.

Although this court and the Court of International Trade traditionally did not accord *Chevron* deference to Customs Service regulations interpreting statutes, the Supreme Court recently held that the courts must apply *Chevron* deference to Customs interpretations in a published regulation. *See Haggar,* 119 S.Ct. at 1400 ("Like other courts, the Court of International Trade must, when appropriate, give regulations *Chevron* deference."). Thus, if the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.

■ Here, unfortunately, the regulation itself is ambiguous, so the court is forced to rely on Customs's interpretation of its own regulation. If the court must now accord *Chevron* deference to Customs regulations interpreting statutes, we must accord at least as much deference to that agency's interpretation of its own regulations. Accordingly, we will defer to the

---

**9.** Cargo being transported to or from Alaskan and Hawaiian ports was made exempt from the HMT to avoid imposing an undue burden on those states, which rely heavily on ship-ping for basic necessities. *See* 26 U.S.C. § 4462(b)(B), (C); 52 Fed.Reg. 10198, 10199 (1987).

Customs interpretation unless it is unreasonable.

The government argues that Customs's interpretation of its own regulations to define "board" and "disembark" to include stopovers or layovers is not unreasonable and comports with the intent of Congress to impose a fee based on port usage and the language of the statute, which does not explicitly exclude stopovers or layovers but does exclude other port uses, such as ferries. We agree.

In light of the clear intent of Congress to impose a fee on all port use as revealed in the legislative history, the Customs interpretation including stopovers and layovers in the port use covered by the HMT is not unreasonable. The HMT is intended to charge those using the ports for the expense of maintaining the ports. It is not apparent to us that the use of the port to discharge passengers for shopping and sight-seeing in a port and then reboard those same passengers is any less of a use or has any less impact on the port than boarding or discharging passengers at the beginning or end of a cruise.

■ In addition to its argument that the Customs regulation is contrary to the statutory language, Princess also argues that Customs initially informed the company that the HMT would not apply to the layovers or stopovers and thus could not later decide to apply the tax to those port uses. According to Princess, the Regional Director of the Regulatory Audit Division advised the company in a fax that the Office of Regulations and Rulings had determined that the HMT did not apply to stopovers and layovers. The fax stated that 19 C.F.R. § 4.80a(a)(4) (discussed above) applied to Princess and no HMT was due for the stopovers. The government points out, however, that this was not a formal "letter ruling" or adjudication by Customs because such a letter must issue from Headquarters or the appropriate office of Customs. In this case the appropriate office was the International Trade Compliance Division or the Office of Regulations and Rulings, not the Pacific Regional Office.

■ It is well settled that a party cannot claim estoppel against the government based on the actions of an agency employee. Since the fax that Princess relies on could not have been a formal letter ruling or adjudication upon which it was entitled to rely, we reject Princess's estoppel arguments.

Consequently, we hold: 1) the application of the HMT to passenger transport is constitutional; and 2) Customs Service's interpretation of the statute to apply the HMT to layovers or stopovers in HMT-covered ports, even when the beginning and ending points of the cruise are in foreign countries or HMT-exempt ports, is reasonable. Therefore, we reverse the decision of the Court of International Trade and remand for a determination of Princess's HMT liability that is consistent with this decision.

### III. The Arriving Passenger Fee

■ With regard to the APF, Princess argues that the statute should be interpreted to mean that a "journey" includes only the cruise travel and thus the journey "originates" where the cruise begins and not where the passenger first departed from the United States on a plane. Customs, however, has interpreted "journey," under the statute, to include all stages of an itinerary, even in those circumstances where travel is on different modes of transportation and covers multiple destinations. *See* 19 C.F.R. § 24.22(g)(2)(i)(B).

■ As discussed above, the Supreme Court's decision in *Haggar* makes clear that a Customs regulation interpreting a statute is entitled to *Chevron* deference. *See* 119 S.Ct. at 1400. That deference is not affected by the fact that Customs promulgated the regulation formalizing its interpretation of the statute subsequent to imposing the APF on Princess pursuant to that interpretation. *See Smiley v. Citibank (S.D.), N.A.,* 517 U.S. 735, 739–41,

116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (holding that neither an agency's delay in promulgating a regulation nor the fact that "it was litigation which disclosed the need for the regulation" affects the court's deference to the agency's interpretation of an ambiguous statute as embodied in such regulations). Thus we will apply the traditional two-step *Chevron* analysis to the APF statute and its interpretation by the Customs Service.

Princess contends that even with *Chevron* deference Customs's interpretation must fail because it is at odds with the statute, exceeds the congressional delegation of authority and is unreasonable, arbitrary and capricious. First Princess argues that the intent of Congress was clear and unambiguous with regard to the meaning of journey. We reject this argument, however, because the statute clearly does not provide any definition of the term "journey."

Princess next argues that Congress did not grant Customs broad power to promulgate substantive regulations when it passed the COBRA, but rather gave Customs the limited role of administering the APF. The legislative history reveals concern in Congress that Customs not use the APF to exact additional fees for other services or to increase the paper-work burden imposed on industry. It does not reveal, however, any specific definition of journey or concern that application of the APF to passengers making layover stops in APF-covered ports would be an imposition of "additional fees" or a greater paper-work burden. Accordingly, we hold that defining journey to include multiple stops or more than one mode of transportation was not outside the scope of the authority granted to Customs by Congress.

Princess argues that the Customs interpretation is arbitrary and capricious because such interpretation unfairly subjects Princess to APF liability based on decisions made by passengers regarding air travel which are out of Princess's control. To support its argument Princess quotes from the Customs ruling denying its protest in which Customs declares that a travel agent issuing a plane ticket and a cruise ticket would be liable for the APF, whereas neither the travel agent nor the cruise operator would be liable if each issued the same tickets independently. Princess poses other hypotheticals with equally anomalous results, such as a passenger arriving for a cruise from overseas or a passenger who makes a trip abroad before traveling to a U.S. departure port.

■ It is not clear, however, that any of the scenarios presented by Princess are currently at issue. Customs asserts that its interpretation only applies to those situations where Princess sells a cruise package or otherwise coordinates an itinerary such that Princess would be aware of the journey's beginning and ending points. In fact, the government argues the hypotheticals are just that, as none have actually been imposed on Princess nor would the APF be imposed on Princess in situations where it was unreasonable to do so. We therefore refuse to hold Customs's interpretation of the statute to be unreasonable merely because the Appellee can conjure a hypothetical situation in which that interpretation would produce unreasonable results. Rather we hold that the Customs interpretation, imposing liability for the fee on the party issuing the travel documents, or in the case of foreign-issued tickets, on the carrier transporting the passenger out of the United States customs territory, avoids the record-keeping difficulties hypothesized by Princess, because the responsible entity necessarily knows the entire itinerary of the passenger traveling on that set of travel documents.

■ Finally, Princess argues that the plain language of the statute exempts from the APF any passenger whose last port of call before arriving in the U.S. was an exempt port, regardless of non-exempt locations visited prior to the exempt port. This interpretation directly conflicts with

the language of the statute, and thus we reject it.

■ The statute exempts trips that "originated in the United States and [were] *limited to* " Canada, Mexico, a territory, possession or an adjacent island. 19 U.S.C. § 58c(b)(1)(A)(i)(II) (emphasis added). If the interpretation offered by Princess were allowed to stand, the exemption in the statute for trips originating in the U.S. would become superfluous. If all APF liability was dependent only on the last stop before entering a U.S. port, Congress would not have needed to create an exemption for those trips originating in the U.S. and stopping only at exempt ports, since those trips, by definition, would already be excluded from APF liability by the other exemptions. It is a long-held tenet of statutory interpretation that one section of a law should not be interpreted so as to render another section meaningless. Accordingly, we hold that the exemption depends on where the journey "originated," not on the last port of call before entering the United States.

■ For similar reasons, we reject the lower court's holding that "layover stops at APF-covered ports do not, in and of themselves, trigger APF liability." *Princess Cruises, Inc.* 15 F.Supp.2d at 804. The statute is clear, when a journey begins and ends in the United States, the journey is only exempt from the APF if the entire journey is "limited to" Canada, Mexico, U.S. territories or possessions, or the adjacent islands. 19 U.S.C. § 58c(b)(1)(A)(i)(II). Thus, any journey beginning and ending in the U.S., including journeys involving both airline and cruise ship travel, as described above, will be subject to APF liability if any stop on the itinerary was in a non-exempt port. However, because it is the place of origin that determines liability, if the journey "originated" in one of the exempt ports, such as Puerto Rico, then a stopover or layover in a non-exempt port will not trigger liability even if the traveler enters the United States at the end of the journey.

In addition to the arguments addressed above, Princess also asserted at oral argument before this court that it did not issue any tickets, but rather that all tickets were issued by independent travel agents. Thus, Princess claimed it should not be subject to APF liability even if the Customs interpretation of the word journey is found to be reasonable, because the regulation requires that the APF be paid by the entity issuing the ticket. The trial court made no findings regarding whether or not Princess issued some or all of the tickets in question. Also not briefed or fully argued before this court is the question of whether Princess as a principal would be liable for the APF on tickets distributed by designated travel agents acting on its behalf. This court is without any evidence upon which to make a determination regarding whether Princess, or another party, is liable for the APF on the tickets in question. In addition to the question of which party is responsible for collection of the APF on the tickets, a number of other factual questions must be answered before a final determination of liability can be made. Those factual findings must be made by the trial court on remand.

Because we hold that the Customs Service's interpretation of the APF statute is not unreasonable, we reverse the lower court's holding that APF liability depends only upon the points of origination and termination of the cruise. We further reverse the holding that layovers and stopovers do not trigger APF liability, and hold that APF liability attaches when a passenger whose journey originates in the United States has a layover or stopover in any non-exempt port. Consequently, we remand this case to the Court of International Trade for a determination of Princess's APF liability that is consistent with this decision.

## CONCLUSION

The judgment of the Court of International Trade is

*REVERSED* and the case is *REMAND-ED.*

### COSTS

Each party to bear its own costs.