Slip Op. 02 - 151

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| LAIZHOU CITY GUANGMING PENCIL-MAKING CO. LTD., ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **Before: MUSGRAVE, JUDGE** |
| v. | : | |
| | : | Court No. 01-00047 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

[Plaintiffs moved for judgment on the agency record challenging the decision of the United States Department of Commerce, International Trade Administration, ("Commerce") to rescind the fifth administrative review of the antidumping duty order on cased pencils from the People's Republic of China with respect to Laizhou. Commerce argued that there was substantial evidence on the administrative record supporting its determination that Laizhou did not export the subject merchandise to the United States during the period of review, but instead sold the merchandise to a trading company which then exported the merchandise to the United States. **Held**: Viewing the record as a whole, the Court holds that it is possible to draw two inconsistent conclusions, and this "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Therefore, Commerce's decision to rescind the administrative review of Laizhou is sustained.]

Decided: December 18, 2002

*William J. Platzer*, for Plaintiffs.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (*Richard P. Schroeder*), and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Arthur D. Sidney*), of counsel, for Defendant.

## OPINION

In this action, Plaintiffs Laizhou City Guangming Pencil-Making Co., Ltd. ("Laizhou"), a

Chinese village enterprise producing wooden pencils, and Simmons Rennolds Associates, L.L.C.

("Simmons"), a United States importer of pencils produced by Laizhou, contest the decision of the United States Department of Commerce, International Trade Administration, ("Commerce") to rescind the fifth administrative review of the antidumping duty order on cased pencils from the People's Republic of China with respect to Laizhou. Commerce rescinded the review of Laizhou because it concluded, based on the administrative record, that Laizhou "had not exported subject merchandise to the United States during the [period of review]." *Certain Cased Pencils from the People's Republic of China; Preliminary Results and Rescission in Part of Antidumping Duty Administrative Review*, 66 Fed. Reg. 1638, 1639 (Jan. 9, 2001). Commerce determined that Kaiyuan Group Corporation ("Kaiyuan"), a Chinese trading company, was the exporter of the pencils produced by Laizhou, but no party requested a review of Kaiyuan's U.S. sales.[1] *Id.*

Plaintiffs argue that Commerce's determination is not supported by substantial evidence on the record. To the contrary, they contend that the record shows that Laizhou was the actual exporter and Kaiyuan was merely its agent for processing the paperwork and handling the logistics of the shipment to the U.S. Alternatively, Plaintiffs argue that the request for an administrative review of

---

[1] During an administrative review, Commerce must determine, *inter alia*, the export price of the subject merchandise. *See* 19 U.S.C. § 1675(a)(2). The term "export price" means "the price at which the subject merchandise is first sold (or agreed to be sold) before the date of importation by the producer or exporter of the subject merchandise outside of the United States to an unaffiliated purchaser in the United States or to an unaffiliated purchaser for exportation to the United States." 19 U.S.C. § 1677a(a). When Commerce reviews export sales from a nonmarket economy country such as China that are made through a trading company, it reviews the trading company, not the producer that supplies the subject merchandise to the trading company. *See* Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Def.'s Br.") at 15-16 (citing *Antidumping Duties, Countervailing Duties; Final Rule*, 62 Fed. Reg. 27296, 27303, 27305 (May 19, 1997)). "The reason for this practice is that it is the exporter who actually determines the price at which the subject merchandise is sold in the United States." *Id.* (citations omitted).

Laizhou's sales should also cover any sales deemed attributable to Kaiyuan based on the principal-agent relationship between the two companies. Plaintiffs also argue that Commerce should be estopped from denying review since it failed to advise Robert Doyle, Plaintiffs' counsel during the administrative review, that review of Kaiyuan would be necessary in this instance because Commerce calculates antidumping rates for export trading companies in nonmarket economy countries rather than the manufacturers supplying the trading companies. Finally, Plaintiffs charge that Commerce failed to keep records, as required by law, of face-to-face discussions and telephone discussions with Mr. Doyle, and as a result the Court should give full weight to the affidavit of Mr. Doyle which Plaintiffs have submitted in the appendix to their brief.

For the reasons that follow, the Court holds that the substantive evidence on the record, taken as a whole, is capable of supporting both the conclusions argued by Plaintiffs and those made by Commerce; therefore it must sustain Commerce's determination. Moreover, the Court holds that the request for review of Laizhou's sales does not also cover sales by Kaiyuan of merchandise produced by Laizhou, and estoppel cannot be asserted against the government in this instance.

### *Jurisdiction and Standard of Review*

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). The Court shall uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), and *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). This standard requires "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). However, substantial evidence supporting an agency determination must be based on the whole record, and a reviewing court must take into account not only that which supports the agency's conclusion, but also "whatever in the record fairly detracts from its weight." *Melex USA, Inc. v. United States*, 19 CIT 1130, 1132, 899 F. Supp. 632, 635 (1995) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## *Background and Factual Allegations*

Plaintiffs allege that Laizhou sold pencils directly to Simmons, employing Kaiyuan as a mere agent to handle paperwork and currency exchange. Therefore, they argue that Commerce should regard Laizhou as the exporter and conduct a full administrative review of its sales. At some point prior to start the period of review in question, Simmons and Laizhou entered into an "indefinite delivery/indefinite quantity requirements type contract" which provided "for Laizhou to be the exclusive Chinese supplier of pencils to Simmons in the US and for Laizhou to sell no pencils for the US except to Simmons." Brief in Support of Plaintiffs' Motion for Judgment Upon the Agency Record ("Pl.s' Br.") at 15. Laizhou is located in a remote village far from the nearest port and "did not employ any person with knowledge of freight forwarding" or "any person who could read, write or speak English" and "did not have sufficient export business to hire appropriate personnel." *Id*.

at 17.  Initially "a Hong Kong freight forwarder handled translation, shipping, and foreign currency

payment details" between Laizhou and Simmons.  *Id*. at 16.  Kaiyuan was subsequently selected to

handle these aspects of the transaction due to its closer proximity to Laizhou.  *See id*. at 16-18.

Kaiyuan is a state-owned trading company, but at the time it entered into this arrangement

with Laizhou and Simmons "it was losing money and was no longer subsidized in any way by the

central or local government." *Id.* at 17.   Thus, to provide cash flow it agreed to "handle Laizhou's

export paperwork and Simmons' delivery orders, for a contingent fee of five percent (5%) of

Laizhou's FOB price" and "agreed to refrain from selling pencils in the United States." *Id*.  Plaintiffs

state that "this is an unusual arrangement in China, perhaps one of a kind."  *Id*. at 16.

Commerce rejected Plaintiffs' explanation of their arrangement and determined that

"Kaiyuan played a significant role in the sales process and acted as an exporter, not as an

'insignificant agent' or 'scrivener.'" *Dep't of Commerce Issues and Decisions Memo: Final Partial*

*Rescission of Administrative Review*, App. to Pl.s' Br., Tab 10 at 3.  This decision was based on the

following points:

> First, the Laizhou-Kaiyuan export agreement made Kaiyuan responsible for significant export, sales, and marketing activities.  It states that Kaiyuan is "responsible for all the communications with the importers, getting orders, arranging the clearance of the customs, booking shipping space and all the necessary procedures to ensure the export of the pencils." (See exhibit S-B 31 of Laizhou's April 27, 2000, questionnaire response).
>
> Second, sales and shipping documents submitted by Laizhou as attachments to its questionnaire response demonstrate that Kaiyuan is the exporter and the proper party to be reviewed.  Laizhou submitted 1) several purchase orders issued by the U.S. importer to Kaiyuan; 2) a sample invoice from Kaiyuan to the U.S. importer; and 3) a bill of lading showing Kaiyuan as the consignor/shipper and the U.S. importer as the consignee.

Third, payment is made by the U.S. importer to Kaiyuan's bank account. Kaiyuan then pays Laizhou.

Fourth, Kaiyuan's import/export activities exceed the scope of its agreement with Laizhou; Kaiyuan's business activity as a trading company also includes the import/export of non-subject merchandise, including tools, valves, automobile parts, chemical products, casting and forging products, food and raw material for paper, as evidenced by its organizational chart submitted in Laizhou's April 27, 2000, questionnaire response.

App. to Pl.s' Br., Tab 10 at 4.

### *Discussion*

Plaintiffs argue that Commerce misinterprets the transactions between Simmons and Kaiyuan and between Kaiyuan and Laizhou. They contend that "[p]urchase order forms commonly are used to order deliveries against indefinite quantity contracts" and that since Laizhou lacks translating capabilities these orders must necessarily come to Kaiyuan, which then transmits a purchase order in Chinese to Laizhou. Pl.s' Br. at 19. Since there is only one actual sale, from Laizhou to Simmons, there is only one invoice. *See id.* at 20. The invoice must be in English and in U.S. dollars, so Kaiyuan has to generate the invoice, which is included as part of the shipping documents. *See id.* Similarly, Plaintiffs contend that Commerce misinterprets the flow of money in these transactions.

As Laizhou's export agent, Kaiyuan presents completed shipment and quality control paperwork to the correspondent bank in Qingdao in accordance to the terms of the credit document. The bank negotiates the credit document, in US dollars from Simmons' bank, converts the dollar amount into Chinese currency (RMB/Yuan) at the published exchange rate and deposits local currency directly into Kaiyuan's account. Kaiyuan then immediately remits the funds to Laizhou less the agreed upon five percent (5%) for processing paperwork and shipment.

*Id.*

Plaintiffs also argue that Commerce erroneously equates Kaiyuan's act of exporting the merchandise with "selling" the merchandise. *Id*. at 18. They also contend that Commerce misinterprets the statement that Kaiyuan is "responsible for all the communications" with Simmons and Kaiyuan's act of "getting orders" from Simmons to mean that Kaiyuan is independently responsible for "making the sale" or "marketing or generating orders." *Id*. at 19. Furthermore, Plaintiffs' explain that "[c]onsignment is not a sale, nor a contract for a sale" but instead "implies an agency and denotes that property is committed to the consignee for care or sale" and a consignor is the "shipper of goods . . . named in a bill of lading as the person from whom the goods have been received for shipment." *Id*. at 20 (quoting BLACK'S LAW DICTIONARY 278 (5th ed. 1979)) (Plaintiffs' emphasis).

The Court concludes that the documents Plaintiffs submitted to Commerce as exhibits to its responses to the antidumping questionnaires are susceptible to Plaintiffs' interpretation and are not inconsistent with Plaintiffs' explanation of the relationships between Laizhou, Kaiyuan, and Simmons. Nevertheless, the Court also finds that they are at least equally susceptible to Commerce's interpretation and its conclusion that Kaiyuan was the party which sold the subject merchandise to Simmons. Despite Plaintiffs claim that the sale was actually from Laizhou to Simmons, the sales and shipping documents only name Kaiyuan and Simmons. Commerce notes that "the record contains no sales contract between Laizhou and Simmons." Def.'s Br. at 18. Plaintiffs reply that "[t]he contract . . . was oral, because neither could read the other's written language" and point to statements on the record which describe the sales contract. Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record at 10.

Nevertheless, these statements are of little probative value apart from documentation to substantiate the claims unambiguously. The only documents not previously discussed that lend some support to Plaintiffs' position are the communications between Simmons and Kaiyuan and Kaiyuan and Laizhou regarding the price of the pencils. *See* App. to Pl.s' Br., Tab 6, Ex. B. These documents support Plaintiffs' assertion that Laizhou was involved (through Kaiyuan) in price negotiations, but are not dispositive proof that Laizhou was the party who determined the ultimate export price. Viewing the record as a whole, the Court holds that it is possible to draw two inconsistent conclusions, and it is well established that this "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

Turning briefly to the other arguments raised by Plaintiffs, the Court holds that Commerce properly declined to review Kaiyuan since neither Kaiyuan nor Simmons requested an administrative review of Kaiyuan during the anniversary month of the publication of the antidumping duty order as provided by 19 C.F.R. § 351.213(b)(1)-(3). The Court also holds that the assessment of antidumping duties is a sovereign function of Commerce, and as a result estoppel does not lie against Commerce in this instance for the failure of its employees to advise Plaintiffs' counsel that Kaiyuan should be included in the petition for administrative review. *See Princess Cruise Lines, Inc. v. United States*, 201 F.3d 1352, 1360 (Fed. Cir. 2000) ("It is well settled that a party cannot claim estoppel against the government based on the actions of an agency employee."). Finally, the Court holds that Mr. Doyle's affidavit does not present any information which would alter the outcome of this action.

### *Conclusion*

For the foregoing reasons, Commerce's decision to rescind the fifth administrative review of the antidumping duty order on cased pencils from the People's Republic of China with respect to Laizhou is sustained.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: December 18, 2002
      New York, New York