**Slip Op. 03-26**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| WONDERFUL CHEMICAL INDUSTRIAL, LTD., KWONG FAT HONG DYE-CHEMICALS, LTD., BEIJING DYESTUFFS PLANT, CHINA JIANGSU INTERNATIONAL ECONOMIC TECHNICAL COOPERATION CORPORATION, CHINA NATIONAL CHEMICAL CONSTRUCTION JIANGSU COMPANY, CHONGQING CHUANRAN CHEMICALS GENERAL PLANT, CHONGQING DYESTUFF IMPORT & EXPORT UNITED CORPORATION, HEBEI JINZHOU IMPORT & EXPORT CORPORATION, HEBEI WUQIANG CHEMICAL FACTORY, JIAHUI CHEMICAL WORKS, JIANGSU TAIFENG CHEMICAL INDUSTRY CO., SHANGHAI YONGCHEN INTERNATIONAL TRADING COMPANY, LTD., SINOCHEM HEBEI IMPORT & EXPORT CORPORATION, TAIXING TAIFENG DYESTUFF CO., LTD., TIANJIN HONGFA GROUP CO., and WUHAN TIANJIN CHEMICALS IMPORTS & EXPORTS CORP., LTD., | Court No. 00-07-00369 |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| BUFFALO COLOR CORPORATION, | |
| Defendant-Intervenor. | |

[Department of Commerce's Final Determination is sustained.]

Dated: March 12, 2003

Aitken Irvin Berlin & Vrooman, LLP (Bruce Aitken) for plaintiffs.

Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Lyn M. Schlitt, General Counsel, United States Trade Commission; Philip J. Curtin, Attorney, Office of the Chief Counsel, United States Department of Commerce, for defendant.

Collier Shannon Scott, PLLC (Michael R. Kershow and Paul C. Rosenthal) for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

**GOLDBERG, Senior Judge:** In this action, the Court reviews a challenge to the Department of Commerce's ("Commerce") final determination to impose an antidumping ("AD") order covering certain producers of synthetic indigo from the People's Republic of China ("PRC"). See Synthetic Indigo from the People's Republic of China; Notice of Final Determination of Sales at Less Than Fair Value, 65 Fed. Reg. 25706 (May 3, 2000) ("Final Determination").

Plaintiffs, Wonderful Chemical Industrial, Ltd. ("Wonderful"), Kwong Fat Hong Dye-Chemicals, Ltd. ("Kwong Fat"), Beijing Dyestuffs Plant, China Jiangsu International Economic Technical Cooperation Corporation, China National Chemical Construction Jiangsu Company, Chongqing Chuanran Chemicals General Plant, Chongqing Dyestuff Import & Export United Corporation, Hebei Jinzhou Import & Export Corporation, Hebei

Wuqiang Chemical Factory, Jiahui Chemical Works, Jiangsu Taifeng Chemical Industry Co., Shanghai Yongchen International Trading Company, Ltd., Sinochem Hebei Import & Export Corporation, Taixing Taifeng Dyestuff Co., Ltd., Tianjin Hongfa Group Co., and Wuhan Tianjin Chemicals Imports & Exports Corp., Ltd. (collectively "Plaintiffs"), are PRC-based producers of the subject merchandise and seek relief from Commerce's action under USCIT Rule 56.2. Plaintiffs argue that the Final Determination was neither in accordance with law nor supported by substantial evidence.

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (2000). For the reasons that follow, the Court sustains Commerce's Final Determination.

## I. BACKGROUND

On or about June 28, 1999, domestic producers of synthetic indigo, including defendant-intervenor Buffalo Color Corporation ("Buffalo"), and the unions representing their workers filed antidumping duty petitions with Commerce and the International Trade Commission. The petition alleged that the domestic industry was materially injured or threatened with material injury due to imports of certain synthetic indigo sold at less than fair market value from the PRC.

On July 28, 1999, Commerce initiated its antidumping investigation of possible producers/exporters of synthetic

indigo. <u>Notice of Initiation of Antidumping Duty Investigation: Synthetic Indigo from the People's Republic of China</u>, 64 Fed. Reg. 40831 (July 28, 1999). Due to limited resources, Commerce limited the number of mandatory respondents in the investigation to the two largest producers/exporters of synthetic indigo, Wonderful and Kwong Fat. <u>Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Synthetic Indigo From the People's Republic of China</u>, 64 Fed. Reg. 69723, 697925 (Dec. 14, 1999) ("<u>Preliminary Determination</u>"). Wonderful and Kwong Fat are exporters of synthetic indigo based in the PRC and Hong Kong, respectively. The focused investigation was permissible under 19 U.S.C. § 1677f-1(c)(2).[1]

Upon further analysis, Commerce shifted its investigation from Kwong Fat to Tianjin Hongfa pursuant to 19 U.S.C. § 1677a(a).[2] Tianjin Hongfa is a PRC-based trading company.

---

[1] 19 U.S.C. § 1677f-1(c)(2) permits Commerce to limit its investigation to the largest producers if "it is not practicable to make individual weighted average dumping margin determinations....because of the large number of exporters or producers involved in the investigation or review." In such cases "the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to....exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined." <u>Id.</u>

[2] 19 U.S.C. § 1677a(a) provides that "export price is determined by the price at which the subject merchandise is first sold before the date of importation by the producer or exporter

Specifically, Commerce examined whether Tianjin Hongfa sold the subject merchandise to Kwong Fat with the knowledge that the merchandise was destined for export to the United States.

On December 14, 1999, Commerce issued a preliminary determination.  Preliminary Determination, 64 Fed. Reg. at 69297. In its Preliminary Determination, Commerce found that Tianjin Hongfa knew or should have known that the merchandise was for export to the United States at the time of sale.

Based on that finding, Commerce, pursuant to 19 U.S.C. § 1677b, calculated the dumping margin to determine if Tianjin Hongfa sold its exports at less than fair market value.  Id. at 69729.  Commerce calculated the dumping margin using surrogate values from Daurala, an Indian-based exporter of phenlyglycine. Phenlyglycine is the primary chemical used in the production of synthetic indigo.  Commerce selected Daurala because India is a country that Commerce considers economically comparable to the PRC and because no data was available from a synthetic indigo producer in any other economically comparable country.  Id. at 69728.  Wonderful offered surrogate values from Atul and Traspek, two Indian-based producers of various chemicals including phenylglycine.  Commerce claims that it rejected the Atul and Transpek data on the grounds that departmental practice is to use

---

of the subject merchandise outside of the United States...to an unaffiliated purchaser for exportation to the United States."

financial data that is more narrowly limited to a producer of comparable merchandise.

Using surrogate values from Daurala, Commerce calculated a dumping margin of 25 percent.  Based on that data, Commerce stated in the <u>Preliminary Determination</u> that it had reasonable grounds to believe that critical circumstances existed with respect to synthetic indigo from Plaintiffs.   <u>Id.</u> at 69725.

As defined by 19 U.S.C. § 1673b(e), critical circumstances exist if Commerce has reasonable grounds to believe that:

> (A)(i) there is a history of dumping and material injury by reason of dumped imports in the United States or elsewhere of the subject merchandise,
> or
> (A)(ii) the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the subject merchandise at less than fair value; and
> (B) there have been massive imports of the subject merchandise over a relatively short period of time.

19 U.S.C. § 1673b(e).

Based on its finding of critical circumstances under subsections (A)(ii) and (B), Commerce issued its final determination on May 3, 2000.  <u>Final Determination</u>, 65 Fed. Reg. at 25706.  Subsequently, Buffalo petitioned Commerce for a recalculation of the dumping margins on the grounds that Commerce failed to consider other profits of Plaintiffs.  Upon reconsideration, prompted by Buffalo's petition, Commerce amended the dumping margins to account for profits not included in its original calculation.  <u>See</u> <u>Notice of Amendment of Final</u>

Determination of Sales at Less Than Fair Value and Antidumping

Duty Order: Synthetic Indigo From the People's Republic of China,

65 Fed. Reg. 37961 (June 19, 2000).

Plaintiffs appeal the Final Determination on three grounds.

First, Plaintiffs appeal Commerce's decision to treat Tianjin

Hongfa as an exporter. Plaintiffs argue that Commerce

incorrectly found that Tianjin Hongfa had the requisite knowledge

of the final destination of the synthetic indigo it sold to Kwong

Fat. Plaintiffs also argue that Tianjin Hongfa was an agent of

Kwong Fat, rather than an exporter, based on the definitions

provided by 19 U.S.C. § 1677(13). Second, Plaintiffs argue that

Commerce's use of surrogate values from Daurala produced

aberrational results. Third, Plaintiffs claim that Commerce

improperly found the existence of critical circumstances based on

the miscalculation of a 25 percent dumping margin.

There are two issues on appeal: (1) whether Commerce's

determination to treat Tianjin Hongfa as an exporter was proper

and (2) whether Commerce's use of surrogate values from Daurala

was proper.[3] Commerce's Final Determination with respect to both

---

[3] Plaintiffs' third argument on appeal challenges
Commerce's finding of the existence of critical circumstances.
Plaintiffs argue that Commerce's finding of critical
circumstances was improper since it was based on the calculation
of a dumping margin that exceeded 25 percent. Plaintiffs' sole
argument is that Commerce's reliance on surrogate values from
Daurala resulted in a miscalculation of the dumping margin at 25
percent. See Pl's Reply Br. in Opp. to Def's Briefs at 8.
Because the Court has rejected Plaintiffs' challenge to

issues is sustained.

## II. <u>STANDARD OF REVIEW</u>

The Court will sustain Commerce's <u>Final Determination</u> if it is supported by substantial evidence on the record and is otherwise in accordance with law.  <u>See</u> 19 U.S.C. § 1516(b)(1)(B) (1994).  To determine whether Commerce's interpretation of a statute is in accordance with law, the Court applies the two-prong test set forth in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  First, the Court must determine "whether Congress has directly spoken to the precise question at issue."  <u>See</u> <u>id.</u> at 842.  The Court does so by looking to the statute's text to ascertain Congress's purpose and intent.  <u>Timex V.I., Inc. v. United States</u>, 157 F.3d 879, 881 (Fed. Cir. 1998).  If Congress's intent is unascertainable and the statute is either silent or ambiguous on the question at issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute."  <u>Chevron</u>, 467 U.S. at 843.  Thus, the reviewing court "is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable."  <u>United States v. Mead Corp.</u>, 533 U.S. 218, 229 (2001).

---

Commerce's use of surrogate values from Daurala, it is unnecessary to address this issue any further.

With respect to factual findings, the Court will uphold the agency's factual findings if they are supported by substantial evidence. Koyo Seiko Co. v. United States, 1998 U.S. App. LEXIS 17524 (Fed. Cir. 1998). Thus, the Court must sustain Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions. See Atlantic Sugar, Ltd. v. United States, 2 Fed. Cir. (T) 130, 137, 744 F.2d 1556, 1563 (1984).

### III. DISCUSSION

### A. Commerce's determination to treat Tianjin Hongfa as an exporter

Plaintiffs appeal Commerce's decision to treat Tianjin Hongfa as an exporter. Plaintiffs argue that Tianjin Hongfa does not fall within the meaning of the term "exporter" as used by 19 U.S.C. § 1677(13) and that Tianjin Hongfa lacked knowledge that the United States was the final destination of the exports. Thus, Tianjin Hongfa lacked the requisite knowledge to pass Commerce's "knowledge test," and, therefore, was not an exporter but rather Kwong Fat's "agent" as defined by Section 1677(13).

Since Section 1677(13) was repealed in 1994, it is no longer applicable; the statute remains silent as to what constitutes an individual exporter or producer. AK Steel Corp. v. United States, 22 CIT 1070, 1079, 34 F. Supp. 2d 756, 764 (1998). In any event, the parties do not dispute Commerce's application of

the knowledge test to determine Tianjin Hongfa's status.

Therefore, the Court will not reach the issue of the

appropriateness of the application of the knowledge test.  See

Princess Cruises, Inc. v. United States, 201 F.3d 1352, 1355

(Fed. Cir. 2000) (stating that the court need not address issues

that are not raised in the briefs on appeal).  Thus, the Court

assesses the parties' appeal of Commerce's finding of Tianjin

Hongfa's status as an exporter in light of their acceptance of

the knowledge test.

### 1. **Definition of the Knowledge Test**

Commerce has established and applied a "knowledge test" for

purposes of determining whether various parties involved in

importing and exporting goods are subject to antidumping laws.

A producer passes the knowledge test if the "producer knew

or had reason to know at the time of sale that the goods were for

export to the United States."  Statement of Administrative Action

Accompanying The Trade Agreements Act of 1979, H.R. Rep. No.

4537, 388, 411, reprinted in 1979 U.S.C.A.N. 665, 682.

Application of the knowledge test has been permitted in various

contexts.  See L.G. Semicon Co., Ltd. v. United States, 23 CIT

1074 (1999) (approving Commerce's application of the knowledge

test to determine whether plaintiff-importers were subject to

antidumping duties); see also NSK Ltd. v. Koyo Seiko Co., 190

F.3d 1321 (Fed. Cir. 1999)  (upholding the use of the knowledge

test to determine whether plaintiff was a "reseller" and subject to an antidumping duty); Shieldalloy Metallurgical Corp. v. United States, 20 CIT 1362, 947 F. Supp. 525 (1996) (upholding the use of the knowledge test to calculate foreign market value of plaintiff's exports). In determining whether the producer knew or should have known that the subject merchandise would be exported, this court has held that Commerce need not find that the producer had actual knowledge of the final destination of its exports. Allegheny Ludlum Corp. v. United States, 24 CIT __, __, 215 F. Supp. 2d 1322, 1331 (2000). This is because, "'under those circumstances, it would be extremely difficult for Commerce to ever conclude that a respondent knew sales were for export[.]...The only way to determine actual knowledge is through an admission of the respondent.'" Id. at 1332 (quoting INA Walzlager Schaeffler KG, 21 CIT 110, 125, 957 F. Supp. 251, 263-64 (1997)). A requirement of the producer's actual knowledge would "eviscerate the acknowledged standard." Allegheny Ludlum, 215 F. Supp at 1332. Thus, constructive knowledge has been held sufficient to satisfy the knowledge test. GSA, S.r.l. v. United States, 23 CIT 920, 77 F. Supp. 2d 1349, 1355 (1999).

   2. **Application of the Knowledge Test**

   In GSA, the court upheld Commerce's determination that a producer knew that the exports at issue were destined for the U.S. when the following factors were present: (1) the producer

prepared certificates that stated that the destination of the
exports was the United States;  (2) the packaging size was used
exclusively for the United States; and (3) the producer prepared
packages which stated the destination of the exports.  Id.

Here, Commerce concluded that Tianjin Hongfa passed the
knowledge test based on the following factors: (1) Tianjin Hongfa
prepared the Certificates of Origin and Fumigation, both of which
stated that the exports were bound for the United States,[4] and
(2) Tianjin Hongfa reported in its questionnaire that it only
sold synthetic indigo to Kwong Fat and knew that Kwong Fat only
shipped synthetic indigo to the United States.  See Preliminary
Determination, 64 Fed. Reg. 69723, 69727.  Thus, the fact that
Kwong Fat took title to the exports before shipment did not
detract from Tianjin Hongfa's knowledge of the exports' final
place of destination.

In response to Plaintiff's agency argument, Commerce
acknowledges that the general manager of Kwong Fat had been hired
temporarily by Tianjin Hongfa to act as vice-manager.  However,
Commerce found "no clear evidence on the record that he is

---

[4]  The Certificate of Origin explicitly stated that the
"country of destination [of the exports is] Charlotte, N.C.,
U.S.A and that the "means of transport and [the] route [were] by
steamer [and] from Xingang, China to Charlotte, N.C., U.S.A."
Certificate of Origin of the People's Republic of China, 0000033,
08/01/99.  The Certificate of Fumigation also stated the exports'
destination. Fumigation/Disinfection Certificate, Ministry of
Agriculture of P.R.China, 0000031, Dec. 25, 1998.

involved in the daily production and operation of Tianjin Hongfa, or that his role is anything other than that of an advisor." Final Determination, 65 Fed. Reg. at 25717.  Commerce concluded that Tianjin Hongfa was not a mere "agent" of Kwong Fat, as Plaintiffs argue, but rather was an exporter within the meaning of 19 U.S.C. § 1677a(a).  Id. at 25709.

The Court finds that Commerce acted reasonably in determining that Tianjin Hongfa knew or should have known that its products were bound for the United States.  Tianjin Hongfa prepared, signed, and verified two documents, the Certificates of Origin and Fumigation, which explicitly stated that the exports were destined for the United States.  Additionally, Tianjin Hongfa verified other shipping arrangement documents, which plainly stated that the destination for the exports was the United States.  Preliminary Determination, 64 Fed. Reg. at 69727. Finally, Tianjin Hongfa admitted to only selling synthetic indigo to Kwong Fat and admitting to having known that Kwong Fat sold synthetic indigo only to the United States.  Id.

The Court finds that Commerce's application of the knowledge test and its resultant finding of Tianjin Hongfa's constructive or indirect knowledge is reasonable and supported by substantial evidence on the record.  Accordingly, Commerce's determination that Tianjin Hongfa had the requisite knowledge and thus constituted an exporter is upheld.  See Ceramica Regiomontana,

S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), aff'd, 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987).

**B. Surrogate values from Daurala**

Plaintiffs claim that Commerce erred in its calculation of the normal value of synthetic indigo by using costs of production and profits from Daurala, an Indian-based  producer of phenylglycine.  Phenylglycine is the primary chemical used in the production of synthetic indigo.  Plaintiffs argue that the financial data from Daurala was inappropriate since Daurala was an inefficient producer and did not produce the same final product as Plaintiffs.  Additionally, Plaintiffs claim that data from Atul and Transpek, other Indian-based producers of various chemicals including phenylglycine, provided a better basis for valuing the factors of production and profit.  Commerce claims that since it could not find a producer of synthetic indigo, it used Daurala and rejected surrogate data from Atul and Transpek. It did so because Atul and Transpek produced a wider range of products than Plaintiffs and Daurala.  Commerce's practice is to use financial data that is more narrowly limited to a producer of comparable merchandise.  Preliminary Determination, 64 Fed. Reg. at 69723.  Commerce rejects data based on a producer of a wider range of products when former data are available.  Id. According to Commerce, the more narrowly limited data produces more representative results.  Id.  See also Taiyuan Heavy Mach. Import

& Export Corp. v. United States, 23 CIT 701, 707 (1999) (approving Commerce's preference for and use of surrogate data that is product-specific).

Commerce is obligated to value the factors of production based on the "best available information" from market economy countries that are at a level of economic development comparable to that of the non-market economy country. Those values must be from a significant producer of "comparable" subject merchandise. See 19 U.S.C. § 1677b. Commerce is granted broad latitude and substantial discretion in choosing the information on which it relies. Shandong Huarong Gen. Corp. v. United States, 159 F. Supp. 2d 714, 718 (Ct. Int'l. Trade 2001). In Shandong Huarong, the court upheld Commerce's use of surrogate values from an Indian-based producer of HTS Category 7214.10.09 forged steel ("forged steel"), a product that was deemed comparable to the subject merchandise, steel bars. The court recognized that it was arguable that the forged steel was used in the production of the subject merchandise. See id. at 722. Yet the court upheld Commerce's surrogate values because "Congress has granted Commerce substantial discretion and has bound the Court to respect that discretion, even where the Court would have reached a different conclusion had this case been reviewed *de novo*." Id. at 723. Thus, the standard of review precludes a court from deciding whether the surrogate values used were the absolute best available in these circumstances. Id.

Likewise, based on the substantial discretion afforded Commerce in selecting the data on which it relies and the meaning of "best available information" in 19 U.S.C. § 1677b, Commerce's use of surrogate values from Daurala was reasonable. See Shandong Huarong, 159 F. Supp. 2d at 718. In doing so, the Court does not decide whether the surrogate value chosen by Commerce was the absolute best available information. The sole product produced by Daurala, phenylglycine, is considered the primary component used in the production of synthetic indigo. In addition, data from Atul and Transpek covered a wider range of products and therefore may have been less comparable to Plaintiffs' factors of production. Accordingly, Commerce's use of surrogate values from Daurala is upheld.

## IV. CONCLUSION

For the aforementioned reasons, the Court (1) affirms Commerce's determination that Tianjin Hongfa had knowledge of the final destination of its exports and was an exporter; and (2) affirms Commerce's use of surrogate values from Daurala.

**SO ORDERED.**

**Richard W. Goldberg**
**Senior Judge**

**Date:      March 12, 2003**
**New York, New York**

**ERRATA**

<u>Wonderful Chemical Industrial Ltd. et al v. United States</u>, Court No. 00-00369, Slip Op. 03-26, issued March 12, 2003.

- On page 2, the identification of defendant's counsel should read "<u>Robert D. McCallum, Jr.</u>, Assistant Attorney General, <u>David M. Cohen</u>, Director, <u>Lucius B. Lau</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; <u>Philip J. Curtin</u>, Attorney, Office of the Chief Counsel, United States Department of Commerce, for defendant."