# United States Court of Appeals for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2014-1581

---

Appeal from the United States Court of International Trade in No. 1:03-cv-00115-JMB, Senior Judge Judith M. Barzilay.

---

Decided: January 6, 2016

---

STEPHANIE A. DOUGLAS, Bush Seyferth & Paige, PLLC, Troy, MI, argued for plaintiff-appellant. Also represented by NED H. MARSHAK, JOSEPH MARTIN SPRARAGEN, ROBERT B. SILVERMAN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, New York, NY.

EDWARD FRANCIS KENNY, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by JOYCE R. BRANDA, JEANNE E. DAVIDSON, AMY M. RUBIN.

---

Before PROST, *Chief Judge*, LOURIE and REYNA, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* PROST.

Dissenting opinion filed by *Circuit Judge* REYNA.

PROST, *Chief Judge*.

This appeal concerns Customs and Border Protection's ("Customs") decision to treat Ford Motor Company's ("Ford") duty refund claims under the North American Free Trade Agreement ("NAFTA") differently depending on whether those claims were filed traditionally or through an electronic process known as "reconciliation." We previously remanded this long-running dispute to the Trade Court for a narrow inquiry: whether there is a reasonable explanation for Customs' decision to treat the claims differently. *Ford Motor Co. v. United States*, 715 F.3d 906, 917 (Fed. Cir. 2013) ("*Ford IV*"). On remand, Customs first explained that traditional refund claims and reconciliation claims are governed by different implementing statutes; thus, Customs was not inconsistent in its treatment of identical claims. Second, Customs noted that even if both types of claims were governed by the same statute, procedural differences among traditional and reconciliation claims justify treating the claims differently. The Court of International Trade ("Trade Court") found Customs' explanation reasonable. For the reasons stated below, we affirm.

## BACKGROUND

We provided a detailed explanation of the background of this case in *Ford IV*. 715 F.3d at 908–12. Thus, we only briefly recite the pertinent facts here. Ford imported automotive goods into the United States and paid the duties on them. Ford later claimed NAFTA preference on those imports and filed for refund of the duties it paid under 19 U.S.C. § 1520(d). The parties agreed to rely on

one entry as the test case: a June 27, 1997 entry via Detroit. Under § 1520(d)'s default procedures implemented by 19 C.F.R. § 181.22, Ford was required to file the certificates of origin within one year of importation. But Ford did not file the certificate of origin until November 5, 1998, beyond the one-year filing deadline. Ford was also unable to secure the port director's written waiver for the certificates under 19 C.F.R. § 181.22(d)(1)(i). Customs denied Ford's claim, stating that the "Certificate of Origin was not furnished within one year of the date of importation." J.A. 224. Ford filed a protest to contest the denial, and Customs denied the protest on the same grounds.

In *Ford IV*, Ford contended that Customs had an affirmative obligation under its own regulation to accept Ford's untimely filing of the certificates. We rejected that argument. *Ford IV*, 715 F.3d at 915. Ford's only remaining contention was that Customs' refusal to grant Ford a waiver for the certificates was arbitrary and capricious based on Customs' waiver of the filing requirement in a separate reconciliation program. Ford argued that its traditional refund claims, although not processed through the reconciliation program, should nevertheless enjoy the same waiver benefit available through that program. *Id.* Previously, the Trade Court did not explore Customs' authority and reasoning for waiving the certificate filing requirement under the reconciliation program because Ford's claims at issue were not processed through that program. *Id.* We remanded to the Trade Court to conduct this limited inquiry. *Id.* at 917.

On remand, Customs explained that the reconciliation program, authorized by 19 U.S.C. § 1484(b), is a procedural means for processing import entries. *Ford Motor Co. v. United States*, 978 F. Supp. 2d 1350, 1353–54 (Ct. Int'l Trade 2014) ("*Ford V*"). Among the features of the reconciliation program is an ability to claim the substantive duty refund benefit under § 1520(d). *Id.* Customs explained that the reconciliation program has "a set of

statutory safeguards that permit Customs to remedy mistakes and misconduct in awarding duty free treatment under NAFTA." *Id.* at 1356–57. Many of the reconciliation program's statutory safeguards are not available in the traditional post-entry duty refund process. *Id.* at 1356. The Trade Court noted that the reconciliation program provides Customs an added level of confidence in the legitimacy of the importer's claims. *See id.* at 1358 ("The record keeping requirements and auditing procedures give Customs well-defined procedures for ensuring the correctness of entries made through the fully automated Reconciliation Program."). Under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Trade Court concluded that Customs' interpretation of the statutory scheme entrusted to its administration was reasonable. *Ford V*, 978 F. Supp. 2d at 1352, 1359.

## DISCUSSION

We review legal conclusions from Customs and the Trade Court de novo, *Universal Electronics Inc. v. United States*, 112 F.3d 488, 493 (Fed. Cir. 1997), subject to any deference owed to Customs' statutory interpretations, *Princess Cruises, Inc. v. United States*, 201 F.3d 1352, 1357 (Fed. Cir. 2000). We similarly review law of the case de novo. *See Laitram Corp. v NEC Corp.*, 115 F.3d 947, 950 (Fed. Cir. 1997).

When Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (citing *Chevron*, 467 U.S. at 843–44). "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept

the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (citing *Chevron*, 467 U.S. at 843–44).

On appeal, Ford contends that Customs' remand explanation violates the law of the case and that it is not reasonable. We address each contention in turn.

## A. Law of the Case

Ford argues that this court held in the prior appeals of this case that a single statute, 19 U.S.C. § 1520(d), codifies NAFTA's post-entry duty refund claims process. Ford therefore insists that Customs' remand explanation implicating a different statute violates the law of the case. We disagree.

In our prior decisions, we merely explained that § 1520(d) implements the post-entry duty refund allowed by a particular NAFTA article. *See Ford Motor Co. v. United States*, 635 F.3d 550, 552 (Fed. Cir. 2011) ("*Ford II*"). We did not, however, state that it was the only statutory provision that implements the duty refund process. "The law of the case doctrine is limited to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation." *See Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004). Because our prior decisions did not decide that NAFTA's post-entry duty refund claims process is exclusively governed by § 1520(d), Ford's contention based on the law of the case is incorrect.

## B. Reasonableness of Customs' Remand Explanation

Ford argues that the Trade Court erred in both affording *Chevron* deference to Customs' remand explanation and in finding the explanation reasonable. We disagree on both counts.

### 1. Trade Court Correctly Applied *Chevron* Deference

Ford argues that Customs' remand explanation "conflict[s] with the law of the case, Customs' published interpretation of the Reconciliation Program, the relevant statutes, and the NAFTA treaty itself." Appellant's Br. 16. Ford relies on *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 212 (1988), for the proposition that there is no deference "to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." Appellant's Br. 17. Ford therefore concludes that "no deference is owed to Customs' incorrect interpretation of the NAFTA, § 1520(d), and the Reconciliation Program." *Id*. at 17.

The premise for all of Ford's alleged "conflicts" is that § 1520(d) is the exclusive authority for NAFTA's post-entry duty refund claims process and that a variety of legal and regulatory authorities have repeatedly said so. *See id*. at 29–30 ("NAFTA post-entry refund claims submitted through the Reconciliation Program are subject to all requirements of § 1520(d)—including its one-year filing deadline. . . . In sum, in nearly every published reference to NAFTA reconciliation, Customs includes a citation to § 1520(d)."). But Ford's contentions are based on a misreading of those legal and regulatory authorities.

It is true that those authorities mention § 1520(d) in discussing the reconciliation program's feature for claiming post-entry duty refunds. But those authorities do not state that § 1520(d) exclusively governs the procedure for claiming refunds through the reconciliation program, including the ability to obtain a waiver of certificates of origin. Rather, § 1520(d) explicitly delegates authority to Customs to prescribe regulations to govern the refund claims process. 19 U.S.C. § 1520(d). Customs exercised that authority by promulgating 19 C.F.R. § 181.22 to govern the traditionally filed duty refund claims process. Similarly, Customs was duly authorized by 19 U.S.C.

§ 1484(b) to implement the reconciliation program, a procedural means for processing import entries. Customs has interpreted the various statutes as creating two separate frameworks: one governs Customs' waiver authority with respect to traditionally filed claims, and the other prescribes the particular process of waiver with respect to reconciliation-based claims. That interpretation is not inconsistent with relevant statutes, regulations, or administrative practices.

The dissent disagrees and concludes that "*Chevron* deference does not apply to Customs' remand explanation." Dissent at 11. It argues that Customs' present reliance on § 1484(b) during judicial review is contrary to its focus on § 1520(d) during the administrative process. *Id.* (emphasizing Customs' notice in the Federal Register that reconciliation is a "vehicle by which refunds and certificate of origin waivers are granted under § 1520(d)"); *id.* at 13 ("'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.'" (quoting *Bowen*, 488 U.S. at 213)). Accordingly, the dissent dismisses Customs' explanation as merely a "convenient litigation position" not entitled to *Chevron* deference. *Id.* (internal quotation marks omitted).

The dissent's fault-finding is misplaced. In *Bowen*, the agency's litigation position was contrary to the agency's past implementation of the particular statutory provision governing the disputed claims. 488 U.S. at 212–13; *see also id.* at 209, 211. The context here is far different. First, Ford's import entries at issue were not processed through the reconciliation program. *See Ford IV*, 715 F.3d at 915 ("It is undisputed that Ford's request for a refund of duties paid on the Entry was not made through the reconciliation program."). Indeed, the controversy over the reconciliation program was initially determined by the Trade Court to be irrelevant. *Id.* at 912 (noting that the Trade Court dismissed Ford's reconcilia-

tion program argument in a footnote, stating that Ford's "entries were not subject to the program and the court's inquiry must focus on the statutory and regulatory scheme which governed [Ford's] entries" (alteration in original) (internal quotation marks omitted)). Customs thus had no reason to address the argument that it was treating traditionally filed claims differently from those made under the reconciliation program until we specifically remanded to the Trade Court to make that determination in *Ford IV*. *Id.* at 916 (noting that, given the procedural history of the case, "it is not surprising that the record provides no explanation for Customs' divergent approaches to exercising its § 1520(d) waiver power" and remanding to the Trade Court to consider whether "there is a reasonable explanation for treating traditional § 1520(d) claims differently than § 1520(d) claims made under the reconciliation program"). Because the reconciliation program was not previously material to the administrative adjudication of Ford's claims, Customs' remand explanation regarding § 1484(b) is not merely a "litigation position."

Second, there is no allegation that Customs had extended the reconciliation program's certificate filing waiver to other traditional tariff refund claims but refused to do the same for Ford's traditional refund claims at issue. The dissent's and Ford's reliance on *Bowen* is therefore misplaced and the Trade Court was correct to apply *Chevron* deference in reviewing Customs' remand explanation.

### 2. Customs' Remand Explanation is Reasonable

Customs justifies the reconciliation program's certificate filing waiver based on numerous procedural safeguards not available in the traditional claims process. *Ford V*, 978 F. Supp. 2d at 1356–57. Indeed, it is undisputed that the reconciliation program has additional safeguards, such as the requirement for importers to post

a continuous bond. That alone is a reasonable explanation for the difference in treatment between traditional claims and reconciliation-based claims.

The dissent dismisses that explanation by citing the availability of other enforcement tools common to both processes. The fact that both processes have some of the same safeguards does not, however, negate the added protection that the additional safeguards provide under the reconciliation program. And, as stated above, there is no dispute that the reconciliation program's requirement of a continuous bond provides an additional protection for Customs against improper tariff refund claims.

We are satisfied with Customs' explanation that the differences between the reconciliation program and the traditional post-entry duty refund process warrant different filing requirements. We therefore agree with the Trade Court that Customs' remand explanation is reasonable. Having satisfied our mandate in *Ford IV*, our inquiry goes no further.

CONCLUSION

Customs' remand explanation provides a reasonable explanation for the different filing requirements in the traditional post-entry duty refund process and in claiming duty refund through the reconciliation program.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

---

**FORD MOTOR COMPANY,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-1581

---

Appeal from the United States Court of International Trade in No. 1:03-cv-00115-JMB, Senior Judge Judith M. Barzilay.

---

REYNA, *Circuit Judge*, dissenting.

I find no principled explanation for Customs' decision in this case to treat duty refund claims under NAFTA differently depending on whether those claims were filed traditionally or through an electronic process known as "reconciliation." I dissent.

## BACKGROUND

The fundamental purpose of NAFTA is to provide preferential trade treatment to goods and services that originate within the NAFTA region. Central to NAFTA's purpose is the "certificate of origin." The certificate of origin is a document certifying that goods originate in the NAFTA region and hence qualify for preferential tariff

treatment. North American Free Trade Agreement, Can.-Mex.-U.S., art. 501(1), Dec. 17, 1992, 32 I.L.M. 289, 358 (1993). An importer may claim preferential tariff treatment at importation or may later claim a refund under 19 U.S.C. § 1520(d) for excess duties paid at entry. *Id.* arts. 502(1), 502(3), 32 I.L.M. at 358 (implemented by § 1520(d)). Either claim requires a valid certificate of origin, unless the importation does not exceed a certain value, *id.* art. 503(a), (b), 35 I.L.M. at 358–59, or the importing country has "waived the requirement for a Certificate of Origin," *id.* art. 503(c), 35 I.L.M. at 359. Customs waives the certificate of origin for § 1520(d) refund claims in two contexts.

First, for "traditional" refund claims, Customs follows 19 C.F.R. § 181.22. Section 181.22(d) reflects the NAFTA certificate of origin exceptions set out in NAFTA Article 503 with some variation. The regulation provides that a certificate of origin is not required for non-commercial importation of goods, *id.* § 181.22(d)(1)(ii), commercial importation of goods whose value does not exceed $2,500 (provided an interested party certifies the goods as originating goods or Customs waives this requirement), *id.* § 181.22(d)(iii), and importation of goods for which Customs has waived the certificate of origin requirement, *id.* § 181.22(d)(1)(i). Customs waives "possession" of the certificate of origin under § 181.22(d)(1)(i) on a case-by-case basis.

Second, for refund claims filed electronically through the Automated Commercial System (ACS) Reconciliation Prototype, Customs published a notice in the Federal Register indicating that Customs would waive "presentation" of the certificate of origin for any importer who participates in the reconciliation program, "but the filer must retain [the certificate], which shall be provided to Customs upon request." Revised National Customs Automation Program Test Regarding Reconciliation, 63 Fed. Reg. 6257, 6259 (Feb. 6, 1998) (replacing notice

published Feb. 6, 1997). This dispute arises from Customs' decision to waive the requirement for Ford to present certificates of origin for refund claims filed through reconciliation but not to waive the requirement for similar claims filed traditionally.

## A. Factual History

Upon NAFTA's entry into effect, certificates of origin created difficulty for the respective Customs authorities of the contracting Parties, particularly in the automotive sector. Ford struggled to generate certificates in time to claim preferential tariff treatment at entry. In brief, the large number of suppliers and significantly large number of parts and components sourced around the world made it difficult for importers to acquire certificates, especially within NAFTA's timeframes. As a result, Ford paid duties on originating goods at entry and filed traditional § 1520(d) refund claims when the certificates of origin for those entries became available. Due to increased NAFTA trade, Customs had difficulty processing the high volume of claims, and the lack of a paperless process for submitting certificates compounded the problem.

Reconciliation was designed to alleviate growing complexities in processing international trade, including problems associated with traditional § 1520(d) refund claims. Reconciliation allows importers to file entry summaries using the best available information and electronically "flag" indeterminable information, with the understanding that the importer will provide Customs the information at a later date. J.A. 45 (ACS Reconciliation Prototype: A Guide to Compliance (Sept. 2004)). When information becomes available, the importer files a new entry providing Customs with the information necessary to correct the original entry summary and adjust duties owed by the importer. Ford and other importers worked with Customs to develop Reconciliation in the years following NAFTA's effective date. Reconciliation took

effect on October 1, 1998, and Customs extended the program indefinitely beginning October 1, 2000.

Before reconciliation was fully operational, Ford worked with local ports of entry to develop interim reconciliation for processing electronically submitted § 1520(d) refund claims. As Customs acknowledged during development of reconciliation, these "local, informal versions of 'reconciliation' were problematic because they varied a great deal from place to place." J.A. 43. Ford nevertheless found success with interim reconciliation at several ports of entry. Some ports of entry allowed Ford to electronically file § 1520(d) refund claims without certificates of origin, given that Customs could not yet accommodate electronically filed certificates, even for claims that were otherwise filed electronically.

While Ford succeeded with interim reconciliation at some ports of entry, Ford met resistance at the Detroit port of entry. Anticipating difficulty with electronically filing certificates of origin, Ford wrote a letter dated July 16, 1996, to the (Customs) Detroit Port Director requesting permission to submit CD-ROM disks including certificate of origin data associated with electronically filed § 1520(d) refund claims. The Detroit Port Director took Ford's request under advisement but did not formally respond until April 10, 1998.

In the interim, Ford imported automobile parts from Canada into the United States through the Port of Detroit as usual. Because Ford did not yet have certificates of origin, Ford did not claim preferential tariff treatment at the time of importation and instead paid non-preferential duties as prescribed by the applicable provisions of the Harmonized Tariff Schedule of the United States. Ford later submitted more than 600 refund claims under § 1520(d) through the Electronic Protest Module of Customs' Automated Commercial System ("ACS"). Because the Customs protest module could not accept paper docu-

ments such as copies of certificates of origin, Ford submitted refund claims without certificates, in accordance with interim reconciliation processes Ford had developed at other ports.

After Ford had submitted hundreds of § 1520(d) claims without certificates, the Detroit Port Director responded to Ford's request to provide certificates of origin on CD-ROM disks, which by now was close to two years old, through two letters dated April 10, 1998. In one letter, the Port Director permitted Ford to file § 1520(d) claims on a CD-ROM disk, yet required Ford to "supply the paper documentation required by the regulations." J.A. 162. In another letter, the Port Director acknowledged "some confusion" surrounding Ford's § 1520(d) claims filed without certificates of origin and requested the missing certificates within 60 days. *Id.* at 163.

In response to the Port Director's request, Ford attempted to work with the Port of Detroit to find an efficient process for submitting the certificates of origin. Ford proposed electronically filing the certificates, but the Port of Detroit rejected the proposal, stating that "no electronic format for receiving [certificates of origin] has been approved." J.A. 172. On June 12, 1998, Customs Headquarters informed Ford that its request to electronically file the missing certificates had been officially denied.

Negotiations having failed, Ford complied with the Port Director's request by submitting hard copies of the certificates during the period of August 11, 1998, to December 4, 1998. Despite Ford's submissions, on June 4, 1999, the Port of Detroit informed Ford that its § 1520(d) refund claims were being denied because, while the § 1520(d) claims were timely filed within one year of importation, the certificates of origin were not, and thus the claims were untimely.

Though hundreds of Ford's § 1520(d) claims were affected, the parties agree to use a single representative entry.[1]  The representative automobile parts entered the United States from Canada on June 27, 1997.  As with other entries, Ford did not claim preferential treatment at importation but instead filed a § 1520(d) refund claim (without certificates of origin) on May 13, 1998, less than one year after the date of importation.  Ford submitted the certificates on November 5, 1998, over a year after importation.  Customs denied Ford's claim, stating that the "Certificate of Origin was not furnished within one year of the date of importation."  J.A. 224.  Ford filed a protest to contest the denial, and Customs denied the protest on the same grounds.

At around the time Ford sought review by Customs of the representative entry, Ford had pending protests of denied § 1520(d) claims filed through reconciliation.  Customs ruled in Ford's favor on each of these protests, reasoning that "there is no apparent dispute that the importations at issue met the substantive criteria for eligibility for NAFTA preference."  J.A. 226.  Customs acknowledged "the fact that Customs liquidated certain claims with preference under these same facts creates the risk that Ford's claim of treatment [in this case] might be accepted by a court."  *Id.*  For the representative entry, however, Customs did not waive the one-year certificate of origin requirement, as it had done for contemporaneous reconciliation claims.

## B. Procedural History

Ford sought review of Customs' decision to deny its refund claim for the representative entry in the Trade Court.  *Ford Motor Co. v. United States*, 32 I.T.R.D. 1103 (Ct. Int'l Trade 2010), *available at* 2010 WL 98699.  The

---

[1]    Entry No. 231-2787386-9.

Trade Court dismissed Ford's complaint for lack of subject matter jurisdiction, reasoning that a certificate of origin is an element of a § 1520(d) refund claim that must be filed within one year of importation. *Id.* at *2 (citation omitted). The Trade Court explained that by not filing the certificate of origin within one year of importation, Ford had not met § 1520(d)'s requirements. *Id.* Customs in turn had not reached a "decision" on Ford's protest sufficient for Trade Court jurisdiction under 28 U.S.C. § 1581(a), because a "decision" under § 1581(a) requires "a claim filed in accordance with law." *Id.*

This court reversed. *Ford II*, 635 F.3d at 558. The court explained that § 1520(d) is not a jurisdiction-granting provision because Congress "has not clearly labeled § 1520(d)'s timely certificate filing requirement as 'jurisdictional.'" *Id.* at 557. "[S]o long as notice of a party's § 1520(d) claim is timely filed within one year of importation, failure to adhere to § 1520(d)'s formalities . . . will not deprive the Trade Court of jurisdiction to hear the case." *Id.* The court predicated its holding on Customs' authority under § 1520(d) to waive the certificate of origin, noting that while § 1520(d) does not expressly mention certificate of origin waiver, "it is obvious that § 1520(d) was designed in part to permit the implementation of [NAFTA] Article 503(c)'s waiver authority." *Id.* at 555.

On remand, the Trade Court upheld the merits of Customs' decision, reasoning that § 1520(d) and implementing regulations "require importers to file within one year of importation copies of applicable certificates of origin." *Ford Motor Co. v. United States*, 800 F. Supp. 2d 1349, 1352 (Ct. Int'l Trade 2011). Ford argued that Customs improperly treated traditional claims filed under § 1520(d) differently than claims filed through reconciliation, waiving the one-year certificate of origin requirement for reconciliation claims but refusing to do so for traditional § 1520(d) claims. The Trade Court dismissed

the argument, stating that Ford's "entries were not subject to the [reconciliation] program and the court's inquiry must focus on the statutory and regulatory scheme which governed [Ford's] entries." *Id.* at 1352–53 n.5.

This court vacated the Trade Court's decision. *Ford IV*, 715 F.3d at 917. The court held that Customs may deny a § 1520(d) claim if certificates of origin have not been filed within one year of importation, "and the requirement to file them has not been waived." *Id.* at 913. In contrast to the Trade Court's reasoning, however, the court found reconciliation relevant to Customs' denial of Ford's claims because "the record reflects that Customs has approved Ford's post-entry requests for refunds made through the reconciliation program when Ford did not submit the related [certificates of origin] within one year." *Id.* at 915. Accordingly, the *Ford IV* court remanded this case to the Trade Court to determine "whether there is a reasonable explanation for treating traditional § 1520(d) claims differently than § 1520(d) claims made under the reconciliation program." *Id.* at 917. On remand, the Trade Court ordered Customs to explain why it treated Ford's § 1520(d) claims differently depending on the manner in which Ford filed the claim. Customs explained that this court's inquiry "appears to be based upon the incorrect assumption that Customs' authority to waive presentation of the [certificate of origin] . . . stems solely from the NAFTA and 19 U.S.C. § 1520(d)." J.A. 302 (Remand Report). Customs argued that it had authority to waive the certificate of origin under a "wholly different set of statutes, namely, 19 U.S.C. §§ 1401(s), 1484, 1508, and 1509, which govern the reconciliation process." *Id.* Customs thus contended that its inconsistent treatment of Ford's refund claims "is not the result of two different interpretations of § 1520(d)." *Id.* Customs explained further that it was justified in granting blanket certificate of origin waivers for reconciliation claims and not doing the same for traditional refund claims because the recon-

ciliation statutes, unlike § 1520(d) and associated regulations, "provide strong remedies to Customs should it later discover that the claimed goods are not entitled to NAFTA [preference]." *Id.* at 307–08.

After reviewing Customs' explanation, the Trade Court again upheld Customs' decision to deny Ford's refund claim. *Ford Motor Co. v. United States*, 978 F. Supp. 2d 1350 (Ct. Int'l Trade 2011). According to the Trade Court, Customs' statutory interpretation warrants deference because Customs' explanation involved the "interpretation of the statutory scheme [Customs] is entrusted to administer." *Id.* at 1352 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The Trade Court found that Customs reasonably concluded that waiver for reconciliation claims is governed by statutory safeguards that are inapplicable to waiver for traditional § 1520(d) claims. *Id.* at 1357–59. Ford timely appealed, challenging both the Trade Court's authority to accept Customs' remand explanation under law of the case and this court's prior mandates, in addition to the merits of Customs' explanation.

## DISCUSSION

This court reviews legal conclusions from Customs and the Trade Court de novo, *Universal Elecs. Inc. v. United States*, 112 F.3d 488, 493 (Fed. Cir. 1997), subject to any deference owed to Customs' statutory interpretations, *Princess Cruises, Inc. v. United States*, 201 F.3d 1352, 1357 (Fed. Cir. 2000). For the reasons explained below, I would find that no deference is due and therefore review the statutes de novo. *See id.* ("Statutory interpretation by the Court of International Trade . . . is . . . reviewed de novo.").

Customs' remand explanation includes two distinct arguments. First, Customs argues that its authority to waive certificates of origin stems from two separate statutory schemes. As a result, Customs stresses that it

is not interpreting the same statute differently and thus need not offer a reasonable explanation for treating Ford's claims differently. Second, Customs argues that the *process* governing refund claims differs depending on whether a refund claim is filed traditionally or through reconciliation. Customs' second argument is consistent with the notion that even if waiver authority stems solely from § 1520(d), the difference between the regulatory process governing the two different types of refund claims provides a reasonable explanation for Customs' different treatment of waiver authority granted by the same statute, § 1520(d). *See Ford*, 978 F. Supp. 2d at 1358–59 ("Although § 1520(d) may establish Customs' waiver authority in general, it does not control the actual process of waiver with respect to reconciliation-based claims."). Neither argument is persuasive.

### A. Statutory Authority to Waive Certificates of Origin

#### i. Deference

The majority opinion states that "the Trade Court was correct to apply *Chevron* deference in reviewing Customs' remand explanations." Maj. Op. at 8. A court reviewing an agency's interpretation of a statute it is entrusted to administer applies *Chevron* deference if the "agency interpretation claiming deference was promulgated in the exercise of [Congressionally delegated] authority." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). An agency may exercise Congressionally delegated authority through adjudication, notice-and-comment rulemaking, or through some other "legislative type of activity" indicative of "comparable congressional intent." *Id.* at 227, 232.

Ford argues that no deference is due because Customs' remand explanation is "far removed not only from [the] notice-and-comment process, but from any other circumstances reasonably suggesting that Congress ever thought of . . . deserving [ ] deference." Appellant's Br. at

16 (quoting *Mead*, 533 U.S. at 231). Customs repeats the Trade Court's rationale that Customs' interpretation is reasonable under *Chevron*. Yet Customs fails to explain why its remand explanation should be afforded *Chevron* deference at all.

I would find that *Chevron* deference does not apply to Customs' remand explanation. Customs does not identify any instance in which it officially interpreted its authority to waive certificates of origin for refund claims as stemming from reconciliation statutes. To the contrary, Customs' publications suggest that reconciliation is a vehicle by which refunds and certificate of origin waivers are granted under § 1520(d). *See, e.g.*, Modification of National Customs Automation Program Test Regarding Reconciliation, 62 Fed. Reg. 51,181, 51,182 (Sept. 30, 1997) (characterizing reconciliation as a *"vehicle to file* post-importation refunds claims *under 19 U.S.C. § 1520(d)"*) (emphases added). *See also, e.g.*, Modification and Clarification of Procedures of the National Customs Automation Program Test Regarding Reconciliation, 67 Fed. Reg. 61,200, 61,201 (Sept. 27, 2002) ("There are two ways to make a 1520(d) NAFTA claim: One way is to file [a traditional 1520(d) claim] and the other is to make a 1520(d) claim in accordance with the Reconciliation process.").

The Trade Court agreed that Customs' sources consistently cite § 1520(d) as authority for issuing refunds through reconciliation. *Ford*, 978 F. Supp. 2d at 1358 ("The court notes that Customs has not always provided importers the clearest guidance on this issue and has referenced § 1520(d) when discussing the Reconciliation Program, which implies that 'waiver' is the same whether the claim was made through reconciliation or not."). Customs points to no regulations, letters, or documents supporting its current interpretation. Customs' remand explanation thus finds no basis in any source that would ordinarily demand *Chevron* deference.

Customs argued in its brief to this court prior to this court's most recent remand that the reconciliation program was consistent with waiver authority under § 1520(d). In its brief, Customs explained that "Customs expressly waived the timely submission of the Certificate of Origin requirement of § 1520(d) with regard to all claims submitted pursuant to Customs' Reconciliation Program." Appellee's Br. at 10. Customs explained that reconciliation program certificate waiver arose under § 181.22(d)(1)(i), because "Customs satisfies itself that imported goods will qualify for NAFTA treatment when it accepts participants into the reconciliation program." *Ford IV*, 715 F.3d at 916.

At oral argument, Customs still indicated that its ability to waive the certificate of origin filing requirement under reconciliation was pursuant to NAFTA section 503, therefore arising under § 181.22(d)(1)(i). Oral Argument at 17:49, available at http://oralarguments.cafc. uscourts. gov/default.aspx?fl=2012-1186.mp3. Customs argued that the application process governing reconciliation justified treating the two types of refund claims differently. *Ford IV*, 715 F.3d at 916.

Customs' interpretation morphed on remand. In its brief in the current appeal, Customs argues that its remand report "justifies the different treatment given to certificate of origin waivers under traditional section 1520(d) claims and to section 1520(d) claims made through the Reconciliation Program." Appellee's Br. at 29.

The majority opinion finds that Customs exercised its authority to prescribe regulations to govern traditional 19 U.S.C. § 1520(d) claims by promulgating 19 C.F.R. § 181.22, and that "Customs was duly authorized by 19 U.S.C. § 1484(b) to implement the reconciliation program." Maj. Op. at 6–7. It explains that "Customs has interpreted the various statutes as creating two separate

frameworks: one governs Customs' waiver authority with respect to traditionally-filed claims, and the other prescribes the particular process of waiver with respect to reconciliation-based claims." While this may be Custom's current interpretation, I would not accord this interpretation deference, as there is no indication that Customs interpreted the statutes this way in the past.

It appears that Customs' current interpretation of the basis for waiver in reconciliation—as arising not under § 1520(d) and 19 C.F.R. § 181.22(d)(1)(i) but instead under other statutes discussing reconciliation generally—was crafted for the purpose of this litigation. As a mere "convenient litigation position," Customs' interpretation is not entitled to *Chevron* deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988). "Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands." *Id.* (quoting *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 628 (1971)). I therefore would review the statutes without *Chevron* deference to Customs' interpretation.

Even if not entitled to *Chevron* deference, a statutory interpretation by Customs is ordinarily entitled to deference proportional to the "'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *See Mead*, 533 U.S. at 228 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Deckers Corp. v. United States*, 752 F.3d 949, 954 (Fed. Cir. 2014). An interpretation that a court finds unpersuasive, however, as I find Customs' interpretation, is not entitled to deference, particularly when the interpretation emerges during litigation with no opportunity for public comment. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2169–70 (2012). Accordingly, I would employ traditional tools of statutory interpretation to determine whether Customs has independent

authority under reconciliation statutes to waive certificates of origin.

ii. Source of Certificate of Origin Waiver Authority

NAFTA Article 501(1) requires NAFTA governments to establish "a Certificate of Origin for the purpose of certifying that a good being exported from the territory of a Party into the territory of another Party qualifies as an originating good." NAFTA art. 501(1), 32 I.L.M. at 358. Article 502 defines certificate of origin requirements for claiming preferential tariff treatment at the time of importation or later through a refund claim. An importer claiming preferential tariff treatment at the time of importation must "make a written declaration, based on a valid Certificate of Origin, that the good qualifies as an originating good," and "have the certificate in its possession at the time the declaration is made." *Id.* art. 502(1), 32 I.L.M. at 358. Similarly, an importer applying for a refund of excess duties paid must present both "a written declaration that the good qualified as an originating good at the time of importation" and "a copy of the Certificate of Origin." *Id.* art. 502(3), 32 I.L.M. at 358.

NAFTA Article 503 is a provision establishing specific exceptions to the certificate of origin requirement. *See id.* art. 503, 32 I.L.M. at 358–59. Article 503 states that a "Certificate of Origin shall not be required" in three circumstances. *Id.* at 358. The first two exceptions apply to the importation of goods whose value does not exceed U.S. $1,000 or the equivalent. *Id.* art. 503(a), (b), 32 I.L.M. at 358–359. The third exception applies to the importation of goods into the territory of a party that has waived the certificate of origin requirement. *Id.* art. 503(c), 32 I.L.M at 359. Article 503's exceptions apply to both preferential tariff claims at importation and refund claims because, as a specific provision, Article 503 is an exception to Article 502's general requirements. *See, e.g.*, *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where

there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one.") (citations omitted); *see also Medellin v. Texas*, 552 U.S. 491, 506 (2008) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text.").

As this court explained in *Ford II*, by implementing NAFTA Article 502's refund provision, § 1520(d) also implemented Article 503's certificate of origin exceptions. *Ford II*, 635 F.3d at 555 ("While § 1520(d) does not specifically refer to the waiver provision of NAFTA Article 503(c), it is obvious that § 1520(d) was designed in part to permit the implementation of Article 503(c)'s waiver authority via Customs' regulations."). Like Article 502(3), § 1520(d) requires an importer to submit a copy of a certificate of origin. While no domestic statutory provision parallels NAFTA Article 503 precisely, NAFTA's Statement of Administrative Action, 19 U.S.C. § 3311, injects Article 503's exceptions into § 1520(d) for the purpose of refund claims. *Id.* at 555, n.2; *Bestfoods v. United States*, 165 F.3d 1371, 1374 (Fed. Cir. 1999) ("With [the NAFTA Implementation Act], Congress approved NAFTA, as well as a 'statement of administrative action' that was submitted with the legislation."); *Medellin*, 552 U.S. at 504–05 (explaining that a treaty is domestic law either when self-executing or when implemented by Congress). In sum, § 1520(d) implements NAFTA's certificate of origin waiver authority as negotiated by the NAFTA Parties. Absent § 1520(d)'s implementing provisions, the United States could not waive certificate of origin requirements for NAFTA-traded goods.

In contrast to § 1520(d), the statutory provisions governing reconciliation were not subject to NAFTA negotiations and not part of NAFTA's implementing legislation. The reconciliation provisions do not address NAFTA refund claims specifically. *See* 19 U.S.C. §§ 1401(s), 1484(b). Sections 1401(s) and 1484(b) define and regulate the electronic reconciliation process. That process did not

exist at the time NAFTA entered into effect. It is true that the reconciliation statutes' language relates to imports generally. Yet such general language cannot be construed to independently authorize § 1520(d) refund claims or certificate of origin waivers associated with those refund claims because those matters are "dealt with in another part of the same enactment," § 1520(d). *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (quoting *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932)). I would hold that the reconciliation statutes do not independently implement Article 503's certificate of origin exceptions for § 1520(d) refund claims.

## B. Customs' Procedural Explanation

Customs' second argument in its remand explanation relates to procedural differences between traditional and reconciliation-based § 1520(d) claims. Customs argues that such procedural differences justify its inconsistent treatment of Ford's claims, even if authority to waive certificates of origin stems exclusively from § 1520(d). Customs explains that, by virtue of being an "entry" under § 1401(s), reconciliation claims are safeguarded by statutory recordkeeping and bond requirements, whereas traditional § 1520(d) claims are not. Appellee's Br. at 20–23 (citing §§ 1401(a), 1484, 1508, and 1059). I disagree.

NAFTA recordkeeping requirements apply regardless of the manner in which a § 1520(d) refund claim is filed. Section 1508(a) requires interested parties to "make, keep, and render for examination and inspection" all documents pertaining to importation. Even a refund claim that is not classified as an "entry" is governed by § 1508(a)'s recordkeeping requirements because all refund claims require "a written declaration that the good qualified [as an originating good] at the time of importation." § 1520(d)(1). Section 1508(a)(3) applies to "activities [that] require the filing of a *declaration*, or entry, or both."

(emphasis added). Section 1509's inspection, examination, and audit procedures apply not only for the "purpose of ascertaining the correctness of any entry," but also "for determining the liability of any person for . . . duties, fees and taxes which may be due." *See* § 1509(a). Both traditional and reconciliation-based § 1520(d) claims require Customs to determine liability for duties.

Customs further argues that a bond is required for an "entry," whereas a bond is not required for a traditional § 1520(d) refund claim. Whether a bond is required for an "entry," however, while not being required for a traditional § 1520(d) claim, is of little consequence. Unlike claims arising from reconciliation, traditional § 1520(d) refund claims do not rely on indeterminable information flagged at the time of importation. Rather, the entry is liquidated at importation as if no preferential treatment claim is being made. *See* § 1509(d). The importer thus pays all applicable liquidated duties and fees due at the time of importation, s*ee* J.A. 34, giving Customs an effective bond to guard against incorrect § 1520(d) refund claims. If Customs determines a § 1520(d) claim to be incorrect, Customs simply denies all or part of the refund and retains the duties paid at entry. Customs contends that it also needs a bond to guard against mistakes discovered *after* reliquidation, i.e., mistakes made after Customs has processed a § 1520(d) refund claim. If the importer is responsible for such mistakes, however, Customs has remedies available under § 1592. If Customs finds fraud or negligence, it has authority to administer severe penalties unless the NAFTA importer who discovers the incorrect claim "voluntarily and promptly makes a corrected declaration and pays any duties owing." § 1592(c)(5). Customs can therefore guard against mistakes and abuse without a bond.

Customs also argues that the technical manner in which it has defined waiver justifies treating waiver differently depending on whether an importer files a

refund claim traditionally or through reconciliation. For refund claims made through reconciliation, Customs waives "[p]resentation" of the certificate of origin "but the filer must retain this document and provide it [Customs] upon request." J.A. 51. Under 19 C.F.R. § 181.22(d), on the other hand, Customs waives "possession" of the certificate of origin. Customs argues that because it grants "possession" waivers under § 181.22(d) but only "presentation" waivers through reconciliation, a waiver granted through reconciliation would not prevent Customs from later requesting an importer's certificate of origin if dishonest behavior was suspected. Customs' argument misses the point.

Under the circumstances of this case, Customs could have granted Ford a "presentation" waiver for its traditional § 1520(d) claims. By the time Customs Headquarters was reviewing Ford's traditional § 1520(d) claims, it was also reviewing denials of Ford's claims for preferential treatment filed through reconciliation. Customs thus had already acknowledged statutory authority to waive "presentment" of certificates of origin, i.e., authority to waive less than that authorized by NAFTA Article 503. On the basis of such waiver authority, Customs granted Ford's claims filed through reconciliation, while denying Ford's traditional claims. There was no principled reason for doing so because the same statutory safeguards applied to both sets of Ford's claims, and Ford had submitted all requisite certificates of origin, thus laying to rest any concerns about the authenticity of Ford's claims.

Customs mistakenly assumes that it could not have granted Ford a "presentation" waiver simply because Ford's traditional claims were not formally filed through the reconciliation portal. Ford's claims were filed electronically through the Electronic Protest Module of Customs' Automated Commercial System ("ACS"). Because the Customs protest module could not accept paper documents such as copies of certificates of origin, Ford submit-

ted refund claims without certificates, in accordance with interim reconciliation processes Ford had developed at other ports, and Ford offered to submit certificates of origin on CD-ROM. Ford's claims thus reflected a claim filed under reconciliation in all substantive respects. The fact that Customs issued an informal, across-the-board "presentation" waiver for refund claims filed through reconciliation through notice in the Federal Register illustrates that it could have waived presentment here, particularly when it had no reason not to do so. "A fundamental norm of administrative procedure requires an agency to treat like cases alike." *Wester Energy, Inc. v. Fed. Energy Regulatory Comm'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 549 (2009) ("an agency must act consistently").

## CONCLUSION

Because Customs' remand explanation fails to identify a reasonable basis for its inconsistency, I dissent and would reverse and remand to the Trade Court with instructions to calculate and award Ford's excess duties paid, with interest.